UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PELEUS INSURANCE COMPANY,

                      Plaintiff,

  -against-

LATI CONSTRUCTION CORP., and QI BIAO CHEN,

                     Defendants.
-----------------------------------------------------------------X

Case No.:

**COMPLAINT**

Plaintiff Peleus Insurance Company, ("Peleus"), by and through its attorneys, Farber Brocks & Zane L.L.P., as and for its Complaint against the above-named Defendants, Lati Construction Corp. ("Lati") and Qi Biao Chen ("Chen"), alleges, upon information and belief, as follows:

1. Peleus brings this Complaint pursuant to 28 U.S.C. §§ 2201 and 2202 for, among other things, a declaration that it has no duty to defend, indemnify or otherwise provide insurance coverage for Lati in connection with a Kings County Supreme Court action entitled *Qi Biao Chen v. 439 Lincoln LLC, et al.*, Index No.: 501254/2022 ("the Chen Action").

## THE PARTIES

2. At all times relevant times, Peleus, was a Virginia insurer with its principal place of business in the state of Virginia.

3. Defendant Lati was and still is a domestic corporation organized and existing under the laws of the State of New York, with its principal place of business in Kings County, New York.

4. Defendant Chen is an individual residing in Kings County, New York.

## JURISDICTION AND VENUE

5. Based on the nature of the relief sought herein, this Court may properly hear this matter pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a) based on complete diversity of citizenship between the parties.

7. The amount in controversy here exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) because some or all of the defendants "reside" within the Eastern District of New York.

## MATERIAL FACTS AND PROCEDURAL HISTORY

9. Peleus issued a commercial general liability policy of insurance to Lati, bearing Policy No. 600 GL 0187460 ("the Lati GL Policy").

10. Peleus issued an excess policy of insurance to Lati, bearing Policy No. AR 4237445 ("the Lati Excess Policy").

11. The Lati GL Policy and the Lati Excess Policy are sometimes collectively referred to herein as "the Lati Policies."

12. By summons and complaint electronically filed in the Kings County Clerk's Office, on or about January 13, 2022, Chen commenced the Chen Action against, among others, Lati and the alleged property owner, 439 Lincoln LLC ("Lincoln"), seeking damages for bodily injuries alleged to have been sustained in a July 30, 2021 construction site accident ("the Accident") at premises located at 439 Lincoln Road, Brooklyn, New York ("the Premises").

13. The Lati GL Policy contains, among other terms, conditions and exclusions, an endorsement entitled "CONTRACTOR WARRANTY-SPLIT SCHEDULE ("the Contractor Warranty"), which provides:

**CONTRACTOR WARRANTY – SPLIT SCHEDULE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULES**

**SCHEDULE A**

**No Coverage Applies If Contractor Conditions Not Met**
**Description of Designated Operation(s):**

All work, activities, or operations involving land excavation, building foundation formation, load bearing beam installation, load bearing beam removal, structural steel installation, structural steel removal, elevator shaft work, or work, activities, or operations performed on the exterior of any building or structure.

**Specified Location(s):**

**Contractor's Commercial General Liability Limits of Insurance Requirements:**

Each Occurrence Limit: $5,000.000
General Aggregate Limit: $5,000,000
Products/Completed Operations Aggregate Limit: $5,000,000

**SCHEDULE B**

**No Coverage Applies If Contractor Conditions Not Met**
**Contractor's Commercial General Liability Limits of Insurance Requirements:**

Each Occurrence Limit: $ 2,000,000
General Aggregate Limit: $ 2,000,000
Products/Completed Operations Aggregate Limit: $ 2,000,000

**A. SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended and the following added:

**1. No Coverage Applies If Contractor Conditions Not Met** (SCHEDULE A above applies)

We will have no duty to defend or indemnify any insured if prior to the commencement of any work the insured fails to satisfy all conditions precedent to coverage set forth below with respect to the designated operations described and locations specified in SCHEDULE A above. The insured agrees that we need not demonstrate any prejudice to us as a result of the insured's failure to comply with any of the below conditions in order to enforce those conditions precedent to coverage.

The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed:

> **a.** The "contractor" has signed and executed an agreement with the insured which remains in force and effective until the date on which the work is completed and contains the following provisions:
>
> > **(1)** An agreement to defend, indemnify and hold the insured harmless, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any such "contractor", including all expenses and legal fees incurred to defend claims alleging such losses; and
> >
> > **(2)** A requirement for the "contractor" to name the insured as an Additional Insured under their Commercial General Liability policy on a primary and non-contributory basis in favor of the insured.
>
> **b.** The "contractor" has maintained "adequate insurance";
>
> **c.** The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and
>
> **d.** All documents required must be kept on file and made available at our request.

**2. No Coverage Applies If Contractor Conditions Not Met** (SCHEDULE B above applies)

We will have no duty to defend or indemnify any insured if prior to the commencement of any work the insured fails to satisfy all conditions precedent to coverage set forth below with respect to all operations and locations not described or specified in SCHEDULE A above. The insured agrees that we need not demonstrate any prejudice to us as a result of the insured's failure to comply with any of the below conditions in order to enforce those conditions precedent to coverage.

The insured hereby warrants and agrees that any "contractor" has complied with all of the following conditions prior to the commencement of any work performed:

> **a.** The "contractor" has signed and executed an agreement with the insured which remains in full force and effective until the date on which the work is completed and contains the following provisions:
>
> > **(1)** An agreement to defend, indemnify and hold the insured harmless, to the fullest extent permitted by law, against all losses arising out of the work performed by or on behalf of any such "contractor", including all expenses and legal fees incurred to defend claims alleging such losses; and

(2) A requirement for the "contractor" to name the insured as an Additional Insured under their Commercial General Liability policy on a primary and non-contributory basis in favor of the insured;

**b.** The "contractor" has maintained "adequate insurance";

**c.** The "contractor" has provided the insured with current Certificates of Insurance evidencing Commercial General Liability and Workers' Compensation and Employer's Liability coverage; and

**d.** All documents required must be kept on file and made available at our request.

B. The **DEFINITIONS** Section is amended by the addition of the following:

**1.** "Adequate insurance" means Commercial General Liability Insurance, Workers' Compensation and Employer's Liability Insurance written by an insurance carrier with an A.M. Best rating of not less than A- VII and which:

**a.** Remains in force and effect without a lapse in coverage from the date on which the agreement for work being performed for the insured or on the insured's behalf is executed until the date on which the work is completed;

**b.** Provides Commercial General Liability Limits of Insurance for such operations that are equal to or greater than the Limits of Insurance indicated in SCHEDULE **A** and **B** above;

**c.** Provides Workers' Compensation and Employer's Liability insurance in compliance with the statutes of the applicable state;

**d.** Includes coverage for "bodily injury" or "property damage" arising out of work performed by the "contractor" or on behalf of the "contractor" per the agreement with the insured;

**e.** Does not exclude any claim, "suit", loss, cost or expense arising out of any "bodily injury" to any "worker" of the "contractor;" and;

**f.** Does not contain any conditions or provisions that preclude coverage based on requirements for hiring or contracting with subcontractors or independent contractors.

"Contractor" means contractors, subcontractors, independent contractors or any other person or entity hired to perform work for the insured or on the insured's behalf.

"Worker" means any "employee", "temporary worker", "leased worker", "volunteer worker", apprentice, intern, casual laborer, borrowed employee, borrowed servant, independent contractor or subcontractor, or any person hired or retained by them, that performs work, whether directly or indirectly, for any "contractor".

14. The Lati Excess Policy provides, in pertinent part, as follows:

**SECTION I – COVERAGES**

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" for which the insured is legally obligated to pay and to which this insurance applies.

We have no duty to investigate any claim, suit or proceeding or defend under this policy. However, at our sole discretion we have the right and will be given the opportunity to effectively associate in the defense or investigation of any claim, suit or proceeding. At our sole discretion we also have the right to assume charge of, negotiate and settle any claim, suit or proceeding to which this policy applies. In all such circumstances the insured will cooperate with us fully.

\* \* \*

**2. Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this policy. If any exclusion of "underlying insurance" conflicts with any exclusion in this policy, that exclusion of this policy will apply. However, if that exclusion would result in broader coverage than is provided by the "underlying insurance", the exclusion of the "underlying insurance" will apply. This policy will not provide broader coverage than that provided by all "applicable underlying insurance".

\* \* \*

**SECTION IV- DEFINITIONS**

1. "Applicable underlying insurance" means the policy or policies of "underlying insurance" which provide underlying coverage for loss that resulted in a claim under this insurance.

\* \* \*

6. "Retained limit" means the sum of: a. The limits of "underlying insurance" applicable to the claim; b. Any self-insured retentions contained therein; and c. Any

amount you must pay because the "underlying insurance", as represented by you, is not available for any reason.

\* \* \*

8. "Underlying insurance" means any policy of insurance listed on the Schedule of Underlying Insurance.

15. It is alleged that, at the time of the Accident, Lincoln was the owner of the Premises.

16. It is alleged that, at some time prior to the Accident, Lincoln retained Lati to perform certain services at the Premises.

17. It is alleged that, at some time prior to the Accident, Lati retained Song Metal Works ("Song") to act as its contractor to perform certain services at the Premises.

18. It is alleged that, Song was performing certain services at the Premises at or about the time of the Accident.

19. It is alleged that, at the time of the Accident, Chen was one of Song's employees.

20. It is alleged that Chen was injured during the course of his employment for Song.

21. Peleus assigned counsel to defend Lati in the Chen Action subject to a reservation of its rights, including the right to deny coverage under the Lati Policies and to withdraw the defense being afforded to Lati based upon, among other things, the Contractor Warranty.

22. Non-party Penn-Star Insurance Company ("Penn Star") issued a policy of Commercial General Liability Insurance to Song, which was in effect on the date of the Accident (the "Penn-Star Policy").

23. The Penn-Star Policy carries limits of insurance of $1 million per occurrence.

24. Counsel for Lati demanded, among other things, that Penn-Star defend, indemnify and provide insurance coverage to Lati for the Chen Action under the Penn-Star Policy.

25. By letter dated August 3, 2022, Penn-Star declined to defend, indemnify or provide insurance coverage to Lati for the Chen Action ("the Penn-Star Denial").

26. The Penn-Star Denial is based upon, among other things, the following:

(a) a provision in the Penn-Star Policy that limits coverage to "events taking place" at premises other than the Premises at issue in the Chen Action;

(b) an exclusion from coverage contained in the Penn-Star Policy for injuries sustained by, among others, Song's employees; and

(c) a provision in the Penn-Star Policy that limits coverage to activities which were not performed by Song on the construction project at issue in the Chen Action.

27. Therefore, the insurance procured by Song is not "adequate insurance" within the meaning of the Lati GL Policy.

28. In light of the foregoing, Peleus notified Lati that there is no coverage available to Lati for the Accident and the Chen Action under the Lati Policies.

29. Peleus has included Chen as a party who may have an interest in the coverage determination sought herein, so as to make any such coverage determination obtained herein binding upon him.

## AS AND FOR A FIRST CAUSE OF ACTION

30. Peleus repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "29" as though fully set forth herein.

31. The Contractor Warranty sets forth certain conditions precedent to coverage, including, among others, that Lati's contractors, including Song, maintain "adequate insurance" as that term is defined by the Lati GL Policy.

32. Peleus has the right to enforce the conditions precedent to coverage under the Lati GL Policy as set forth therein without any showing of prejudice.

33. "Adequate insurance" under the Contractor Warranty means, among other things, commercial general liability insurance for work performed for Lati or on Lati's behalf.

34. "Adequate insurance" under the Contractor Warranty means, among other things, commercial general liability insurance with limits of insurance equal to or greater than at least $2,000,000 per occurrence.

35. "Adequate insurance" under the Contractor Warranty means, among other things, commercial general liability insurance that does not exclude coverage for injuries to, among others, Song's employees.

36. The Penn-Star Policy does not provide coverage for the work performed by Song for Lati on the construction project at issue in the Chen Action.

37. The Penn-Star Policy includes, among other things, an exclusion for injuries to Song's workers.

38. The Penn-Star Policy does not have limits of insurance equal to or greater than at least $2 million per occurrence.

39. As a result of the foregoing, Lati's contractor, Song, has not maintained "Adequate Insurance" as that term is defined by the Contractor Warranty in the Lati GL Policy.

40. As such, Peleus properly determined that Lati failed to satisfy the condition(s) precedent to coverage under the Lati GL Policy as set forth in the Contractor Warranty.

41. Peleus also properly determined that there is no coverage available for the Accident and the Chen Action under the Lati GL Policy.

42. As well, Peleus properly determined that there is also no coverage available for the Accident and the Chen Action under the Lati Excess Policy.

43. Therefore, Peleus is not obligated to defend, indemnify or otherwise provide coverage to Lati under the Lati Policies in connection with the Accident and any claims or lawsuits resulting therefrom, including the Chen Action.

44.     As a result, a justiciable controversy exists between Peleus and the parties herein concerning the rights of each other under the terms, conditions and exclusions of the Lati Policies.

45.     Peleus has no adequate remedy at law.

46.     Peleus, therefore, respectfully requests that this Court render a declaratory judgment declaring that it has no obligation to defend, indemnify or otherwise provide coverage to Lati under the Lati Policies in connection with the Accident and resulting claims or lawsuits, including the Chen Action.

## AS AND FOR A SECOND CAUSE OF ACTION

47.     Peleus repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "46" as though fully set forth herein.

48.     Because Peleus is not required to defend, indemnify or otherwise provide insurance coverage to Lati for the Accident or the Chen Action, it is not required to continue to fund the defense it has provided to Lati therein.

49.     As a result, counsel retained by Peleus to defend Lati in the Chen Action may withdraw from the defense of Lati in the Chen Action.

*WHEREFORE*, Peleus demands judgment on its causes of action, together with costs, disbursements, attorneys' fees and such other and further relief as this Court may deem just and proper.

Dated: Garden City, New York
November 21, 2022

FARBER BROCKS & ZANE L.L.P.

By: _____
Audra Zane (ASZ4466)
Joseph K. Poe (JKP1960)
400 Garden City Plaza, Suite 100
Garden City, New York 11530
(516) 739-5100
Attorneys for Plaintiff
Peleus Insurance Company
File No.: 640-12124

TO:

Lati Construction Corp.
*Via Secretary of State*

Qi Biao Chen
534 62nd Street
Brooklyn, New York 11220

**Courtesy Copy To:**
O'Connor Redd Orlando LLP
242 King Street
Port Chester, New York 10574

Sim & DePaola, LLP
42-40 Bell Blvd.
Bayside, New York 11361