UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
**PELEUS INSURANCE COMPANY**,                                    :
                                                                 :
                              Plaintiff,    :   **MEMORANDUM DECISION AND**
                                                                 :   **ORDER**
        – against –                               :
                                                                 :   22-CV-7090 (AMD) (SJB)
                                                                 :
**LATI CONSTRUCTION CORPORATION**                                :
**AND QI BIAO CHEN**,                                            :
                                                                 :
                             Defendants.   :
---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

       The plaintiff brings this action seeking a declaration that it has no duty to defend, indemnify, or otherwise provide insurance coverage to Lati Construction Corporation in connection with a state court action involving one of its subcontractor's employees, Qi Biao Chen. On February 23, 2024, the plaintiff and Lati filed a stipulation of dismissal releasing Lati from the action. Before the Court is the plaintiff's motion for summary judgment against Chen. For the reasons that follow, the plaintiff's motion is granted.

## BACKGROUND[1]

### I.  The Lati Insurance Policies

       The plaintiff issued Lati, a New York-based construction company, a commercial general liability insurance policy ("GL Policy") and an excess insurance policy ("Excess Policy"). (ECF No. 30-1, Pl. 56.1 ¶¶ 1, 4; ECF No. 30-2, Def. 56.1 ¶¶ 1, 4.) Each policy ran from October 23, 2020, through October 23, 2021. (ECF No. 32-3 at 7; ECF No. 32-5 at 4.)

---

[1] Unless otherwise noted, the factual background is based on the Court's review of the entire record, including the parties' 56.1 statements. The Court construes the facts in the light most favorable to Chen, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2015).

The GL Policy provides coverage for any "bodily injury" caused by a workplace accident.  (ECF No. 30-1, Pl. 56.1 ¶ 2; ECF No. 30-2, Def. 56.1 ¶ 2.)  The GL Policy also includes a "CONTRACTOR WARRANTY-SPLIT SCHEDULE" endorsement, which extends coverage for accidents suffered by contractors,[2] subject to certain conditions.  (ECF No. 30-1, Pl. 56.1 ¶ 3; ECF No. 30-2, Def. 56.1 ¶ 3; ECF No. 32-4.)  Specifically, Schedule A of the Contractor Warranty provides that Lati can claim coverage for a contractor accident only if the contractor maintains "adequate insurance" of $5 million, per occurrence and in the aggregate, for "[a]ll work, activities, or operations involving . . . building foundation formation, load bearing beam installation . . . structural steel installation . . . or work, activities, or operations performed on the exterior of any building or structure."  (ECF No. 30-1, Pl. 56.1 ¶ 3; ECF No. 30-2, Def. 56.1 ¶ 3; ECF No. 32-4 at 2.)  Schedule B of the Contractor Warranty provides that for all other accidents the contractor must maintain insurance coverage of $2 million per occurrence and in the aggregate.  (ECF No. 32-4 at 2–3; ECF No. 30-1, Pl. 56.1 ¶ 3; ECF No. 30-2, Def. 56.1 ¶ 3.)

The Excess Policy provides additional coverage for workplace accidents involving Lati.  (ECF No. 30-1, Pl. 56.1 ¶ 5; ECF No. 30-2, Def. 56.1 ¶ 5; ECF No. 32-5.)  However, the Excess Policy also states that it "will not provide broader coverage than that provided by 'all applicable underlying insurance.'"  (ECF No. 30-1, Pl. 56.1 ¶ 5; ECF No. 30-2, Def. 56.1 ¶ 5; ECF No. 32-5 at 10.)  The Excess Policy identifies the GL Policy as the underlying insurance.  (ECF No. 32-5 at 8.)

---

[2] According to the Contractor Warranty, "contractor" includes "contractors, subcontractors, independent contractors or any other person or entity hired to perform work for the insured or on the insured's behalf."  (ECF No. 32-4 at 4.)

2

## II.     The Chen Accident and New York State Action

On April 18, 2021, Lati entered into a "Subcontractor Agreement" with Song Metal Works Inc. to perform construction work at a building site at 439 Lincoln Road, Brooklyn, New York.  (ECF No. 30-1, Pl. 56.1 ¶¶ 9–10; ECF No. 30-2, Def. 56.1 ¶¶ 9–10; ECF No. 32-6.)  The Subcontractor Agreement provided that Song would "perform exterior work on the building, demolition of the building foundation and formation of a new building foundation, and installation of all structural steel beams," among other tasks.  (ECF No. 30-1, Pl. 56.1 ¶ 10; ECF No. 30-2, Def. 56.1 ¶ 10; ECF No. 32-6 at 2.)

On July 9, 2021, Song took out a general commercial liability insurance policy with Penn-Star Insurance Company ("Penn-Star Policy"), which provided coverage up to $1 million per occurrence and $2 million in the aggregate.  (ECF No. 30-1, Pl. 56.1 ¶¶ 18–19; ECF No. 30-2, Def. 56.1 ¶¶ 18–19; ECF No. 32-7 at 16.)  The Penn-Star Policy limited coverage to "events taking place" at 4902 2nd Avenue, Brooklyn, New York, and the activities listed in the "Declarations" page.  (ECF No. 30-1, Pl. 56.1 ¶ 21; ECF No. 30-2, Def. 56.1 ¶ 21; ECF No. 32-7 at 16, 48.)  The Penn-Star Policy also excluded coverage for injuries sustained by Song's employees.  (ECF No. 30-1, Pl. 56.1 ¶ 21; ECF No. 30-2, Def. 56.1 ¶ 21; ECF No. 32-7 at 59.)

On July 30, 2021, Chen, Song's employee, was injured at the 439 Lincoln Road site.  (ECF No. 30-1, Pl. 56.1 ¶¶ 8, 12–13; ECF No. 30-2, Def. 56.1 ¶¶ 8, 12–13; ECF No. 32-8 at 7.)  On January 13, 2022, Chen sued Lati and others in the Kings County Supreme Court for negligence and violations of New York's labor laws in connection with the accident (the "Chen Action").  (ECF No. 30-1, Pl. 56.1 ¶¶ 7–8; ECF No. 30-2, Def. 56.1 ¶¶ 7–8; ECF No. 32-8.)[3]  In his complaint, Chen alleges that he was "sawing wood/lumber . . . [when] suddenly, a large

---

[3] On December 2, 2022, Lati impleaded Song as a third-party defendant to the action.  (ECF No. 32-14.)

portion of the roof, ceiling and wall of the premises . . . [fell] onto [him] . . . [resulting in] serious and permanent physical debilitating injuries." (ECF No. 32-8 at 7.) He asserts that the collapse "was caused by overloading the roof with too many materials" and other construction defects, which were "solely and wholly" attributable to "the negligence of" Lati and the building owner. (*Id.*)[4]

In an April 13, 2022, letter to Lati, the plaintiff explained that they were investigating the Chen Action and reserved all rights with respect to the GL Policy. (ECF No. 30-1, Pl. 56.1 ¶ 14; ECF No. 30-2, Def. 56.1 ¶ 14; ECF No. 32-9.) The plaintiff also assigned counsel to defend Lati in the Chen Action. (ECF No. 30-1, Pl. 56.1 ¶ 14; ECF No. 30-2, Def. 56.1 ¶ 14; ECF No. 32-11.) On June 3, 2022, the plaintiff emailed Lati that it was reserving all rights under the Excess Policy. (ECF No. 30-1, Pl. 56.1 ¶ 15; ECF No. 30-2, Def. 56.1 ¶ 15; ECF No. 32-10.) In a June 29, 2022 letter, Lati's assigned counsel demanded that Penn-Star defend Song in the Chen Action, pursuant to the terms of the Penn-Star Policy. (ECF No. 30-1, Pl. 56.1 ¶ 16; ECF No. 30-2, Def. 56.1 ¶ 16; ECF No. 32-11.)

On July 13, 2022, the plaintiff informed Lati that "there is no coverage available to any party" under the Lati policies in connection with the Chen Action because Lati did not maintain adequate insurance as the Contractor Warranty required. (ECF No. 30-1, Pl. 56.1 ¶ 17; ECF No. 30-2, Def. 56.1 ¶ 17; ECF No. 32-12 at 3.) The plaintiff agreed to "continue to defend Lati in the Chen Action under the [GL] Policy . . . gratuitous[ly]," but stated it would "not indemnify it or otherwise satisfy any judgment entered against it." (ECF No. 32-12 at 3.)

---

[4] Chen attached a list of building code violations at 439 Lincoln Road from the New York City Department of Buildings to his opposition letter. (ECF No. 33-3.)

4

In an August 3, 2022, letter, Penn-Star informed Lati, Song, and the other defendants in the Chen Action that it would not provide coverage for Chen's claims. (ECF No. 30-1, Pl. 56.1 ¶¶ 20–21; ECF No. 30-2, Def. 56.1 ¶¶ 20–21; ECF No. 32-13.) Penn-Star based its decision on the following: (1) the Penn-Star Policy "is limited to events taking place at 4902 2nd Avenue"; (2) the Penn-Star Policy does not cover injury to Song's employees like Chen; (3) Chen was injured doing demolition work, which was "not identified in the Declarations of the" Penn-Star Policy; and (4) Song "ignored its obligations under the policy" to "participate in, and cooperate with, premium audits." (ECF No. 30-1, Pl. 56.1 ¶¶ 20–21; ECF No. 30-2, Def. 56.1 ¶¶ 20–21; ECF No. 32-13 at 11–12.)

### III.  The Federal Action

On November 22, 2022, the plaintiff brought this action against Lati and Chen, seeking a declaration that it has no duty under the Lati policies "to defend, indemnify, or otherwise provide insurance coverage for Lati in connection with" the Chen Action. (ECF No. 1 ¶ 1.) The plaintiff alleges that Lati is not entitled to coverage under the Lati policies because its subcontractor — Song — did not maintain "adequate insurance" as defined in the Contractor Warranty. (*Id.* ¶¶ 30–49.)

On February 23, 2024, the plaintiff and Lati filed a stipulation of dismissal in which they agreed that the plaintiff had no duty to defend or indemnify Lati in the Chen Action. (ECF No. 28.) They also agreed that the plaintiff was "no longer required to continue funding" Lati's defense in the Chen Action. (*Id.* at 2.) The plaintiff moves for summary judgment against Chen, the only remaining defendant in the action. (ECF No. 32.)

### LEGAL STANDARD

Summary judgment is appropriate if the parties' submissions show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of

5

law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant has the burden of showing that there are no genuine disputes of material fact.  *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court views "the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor."  *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).  However, the party opposing summary judgment must identify the facts and evidence that demonstrate a genuine issue for trial.  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Catrett*, 477 U.S. at 324).  The "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Liberty Lobby*, 477 U.S. at 252.  In other words, the nonmoving party must identify the "specific facts" that demonstrate a genuine issue for trial, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and "offer some hard evidence showing that its version of events is not wholly fanciful," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).  If the nonmoving party's "evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  *Liberty Lobby*, 477 U.S. at 249–50 (citation omitted).

## DISCUSSION

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract."  *Parks Real Est. Purchasing Grp.*

*v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (citations and internal quotations omitted). "If the terms are unambiguous, courts should enforce the contract as written." *Lee v. Union Mut. Fire Ins. Co.*, No. 20-CV-3191, 2022 WL 3370086, at *6 (E.D.N.Y. Aug. 16, 2022) (citations omitted), *aff'd*, No. 22-3142-CV, 2023 WL 7014138 (2d Cir. Oct. 25, 2023). Where the language of "the contract is ambiguous, 'particularly the language of an exclusion provision,' the ambiguity is interpreted in favor of the insured." *Wellsville Manor LLC v. Great Am. Ins. Co.*, No. 22-CV-1229, 2024 WL 4362599, at *4 (E.D.N.Y. Oct. 1, 2024) (quoting *Goldberger v. Paul Revere Life Ins. Co.*, 165 F.3d 180, 182 (2d Cir. 1999)); *see also Dean v. Tower Ins. Co. of New York*, 19 N.Y.3d 704, 708 (2012) ("Ambiguities in an insurance policy are to be construed against the insurer.") (alteration incorporated) (citation omitted).

Although Lati has already stipulated that the plaintiff has no duty to defend or indemnify under the Lati Policies, Chen may still seek coverage under New York law. Specifically, New York Insurance Law § 3420(b)(1) permits "any person who . . . has obtained a judgment against the insured" to bring an action "against the insurer upon any policy . . . to recover the amount of a judgment against the insured." Nevertheless, even if Chen obtains a judgment, he still "'stands in the shoes' of the insured and can have no greater rights than the insured." *River View at Patchogue, LLC v. Hudson Ins. Co.*, 122 A.D.3d 824, 826 (2d Dep't 2014) (quoting *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 665 (1990)).

The plaintiff argues that the GL Policy and Excess Policy unambiguously preclude coverage in the Chen Action and that, accordingly, summary judgment is warranted. Chen opposes.

**I. The GL Policy**

The GL Policy states that the plaintiff will provide coverage for "'bodily injury' . . . to which this insurance applies" and that the plaintiff "will have no duty to defend the insured . . .

7

for 'bodily injury' . . . to which this insurance does not apply." (ECF No. 32.-3 at 11.) The Contractor Warranty, which expressly "modifies" the GL policy, provides that "No Coverage Applies If Contractor Conditions [are] Not Met." (ECF No. 32-4 at 2.) In particular, the Contractor Warranty requires that any "contractor" — including any sub-contractor — maintain "adequate insurance" of $5 million per occurrence and in the aggregate for "Designated Operation(s)," which covers "[a]ll work, activities, or operations involving . . . building foundation formation, load bearing beam installation . . . structural steel installation . . . or work, activities, or operations performed on the exterior of any building or structure." (*Id.* at 2–4.) For all other work, the Contractor Warranty requires a contractor to maintain insurance of $2 million per occurrence and in the aggregate. (*Id.* at 2.)

These provisions are unambiguous and establish that the GL Policy does not require the plaintiff to cover any judgment or settlement in the Chen Action. There is no question that Chen suffered a "bodily injury" within the meaning of the GL Policy while he was working at 439 Lincoln Road. (*See* ECF No. 30-1, Pl. 56.1 ¶¶ 8, 12–13; ECF No. 30-2, Def. 56.1 ¶¶ 8, 12–13; ECF No. 32-8 at 7.) Song, Lati's subcontractor, was also subject to the "adequate insurance" conditions in the Contractor Warranty. (ECF No. 32-4 at 3; ECF No. 32-6 at 2.) Song was doing "exterior work on the building, demolition of the building foundation and formation of a new building foundation, and installation of all structural steel beams," work that fell within the Contractor Warranty's definition of "Designated Operation(s)" and required Song to maintain insurance limits of at least $5 million. (ECF No. 30-2, Def. 56.1 ¶ 10; ECF No. 32-4 at 2; ECF

8

No. 32-6 at 2.)  However, Song's Penn-Star Policy provided coverage of only $1 million per occurrence and $2 million in the aggregate.  (ECF No. 32-7 at 16.)[5]

Courts have consistently found that an insured's "failure to comply with the requirements of" a policy endorsement means that the insurer has no duty to defend or indemnify that policyholder.  *Peleus Ins. Co. v. Atl. State Dev. Corp.*, 587 F. Supp. 3d 7, 17 (S.D.N.Y. 2022); *see also Mt. Hawley Ins. Co. v. Liberato*, No. 07-CV-4368, 2010 WL 2653326, at *4 (E.D.N.Y. June 25, 2010) ("Pursuant to the express terms of the endorsement, noncompliance renders void claims arising from work performed by a subcontractor . . . [a]ccordingly, [the insurer] is not required to provide coverage."); *Mt. Hawley Ins. Co. v. Nat'l Builders LLC*, No. 08-CV-5526, 2009 WL 1919611, at *3 (S.D.N.Y. June 30, 2009) ("Defendants do not dispute that they failed to comply with at least three of the conditions of [the policy endorsement] . . . any one of these failures is a sufficient basis for [the insurer] to disclaim coverage."); *Navarro v. PC Grp., LLC*, 100 A.D.3d 722, 723 (2d Dep't 2012) (finding summary judgment appropriate where the insurer "established, prima facie, that [the insured] did not comply with all of the conditions outlined in [an] endorsement . . . and, in opposition, [the insured] failed to raise a triable issue of fact"); *Seaport Park Condo. v. Greater New York Mut. Ins. Co.*, 39 A.D.3d 51, 55 (1st Dep't 2007) ("The condition at issue here . . . constitutes an express condition precedent . . . that must be literally complied with before plaintiff may recover." (citations omitted)).

Chen does not dispute the contractual language or underlying facts.  Rather he argues, in a two-page letter, that because "100% of the liability [for Chen's injuries] rests with Lati and the building owner . . . the Contractor Warranty-Split should not be applicable to preclude coverage

---

[5] Even if the work Song and Chen were performing did not qualify as "Designated Operation(s)," the Penn-Star Policy still did not qualify as "adequate insurance" because Schedule B of the Contractor Warranty requires $2 million of coverage per occurrence and in the aggregate.  (*See* ECF No 32-4 at 2.)

9

in cases in which Lati and not a subcontractor was solely at fault for the accident." (ECF No. 33 at 2.)[6]  The plaintiff cites no contractual provision or other authority to support this reading of the contract, and the Court finds none.  (*See id.*)  The relative fault of Lati and Song for Chen's injuries is a factual question in the Chen Action that has no bearing on Peleus's obligation to provide coverage under the GL Policy.[7]  Accordingly, the plaintiff has no duty to defend or indemnify any party to the Chen Action under the GL Policy.

## II. The Excess Policy

The Excess Policy provides Lati coverage "in excess of the 'retained limit' because of 'injury or damage' for which [Lati] is legally obligated to pay and to which this insurance applies."  (ECF No. 32-5 at 10.)[8]  The preamble to the contract provides that the Excess Policy "will follow the same provisions, exclusions and limitations that are contained in the [GL Policy]" and that "[u]nder no circumstances will coverage provided by this policy ever be broader than coverage provided by" the GL Policy.  (*Id.*)  The "Exclusions" section of the Excess Policy adds that "[i]f any exclusion of [the GL Policy] conflict with any exclusion in this policy, that exclusion of this policy will apply" except that "if that exclusion would result in broader coverage than is provided by the [GL Policy], the exclusion of the [GL Policy] will apply."  (*Id.*)  The Exclusions section reiterates that "[t]his policy will not provide broader coverage than that provided by [the GL Policy]."  (*Id.*)

---

[6] Chen also asserts that the Contractor Warranty "is a form of an indemnification which can be implied from the language and purpose of the entire exclusion."  (*Id.*)  Even if there were a separate indemnification obligation that inures to the plaintiff's benefit, he does not explain why the Contractor Warranty's "adequate insurance" conditions would no longer apply.

[7] Chen's assertion that Song bears no responsibility for his injuries is in dispute because Lati alleges in its third-party complaint against Song that Song was culpable.  (ECF No. 32-8 ¶¶ 22, 27.)

[8] The Excess Policy defines "Retained Limit" as "the sum of: a. The limits of [the GL Policy] applicable to the claim; b. Any self-insured retentions contained therein; and c. Any amount you must pay because the [GL Policy], as represented by you, is not available for any reason."  (*Id.* at 15).

10

As with the GL Policy, these terms are unambiguous.  The Excess Policy states that it "will follow the . . . exclusions" of the GL Policy — including the Contractor Warranty — and that coverage will never "be broader than coverage provided by" the GL Policy.  (*Id.*)  And while the Exclusions section says that exclusions in the Excess Policy prevail in the case of conflict with the GL Policy, there is no conflict here.  (*See id.*)  In short, if there is no coverage under the GL Policy there is no coverage under the Excess Policy.  Courts facing analogous circumstances have reached the same conclusion.  *Citizens Ins. Co. v. Risen Foods, LLC*, 880 F.3d 73, 80 (2d Cir. 2018) ("Because the underlying insurance . . . does not apply . . . the [excess] policy also does not apply."); *Zurich Am. Ins. Co. v. ACE Am. Ins. Co.*, 209 A.D.3d 555, 557 (1st Dep't 2022) ("As [the] insureds are not insured under the [underlying] policy, they likewise do not qualify as insureds under [the] excess policy, as that policy follows form.").

## CONCLUSION

For these reasons, the plaintiff's motion for summary judgment is granted.  The Clerk of Court is respectfully requested to enter judgment declaring that the plaintiff does not have any obligation to provide coverage, and there is no coverage under the Lati policies for the Chen Action, including for any judgment or settlement.

**SO ORDERED.**

    s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       January 6, 2025

11